M.D. SCULLY (SBN: 135853)
ALLISON F. BORTS (SBN: 197895)
JUSTIN D. LEWIS (SBN: 239686)
GORDON & REES, L.L.P.
101 W. Broadway, suite 2000
San Diego, California 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for defendants
PHYSICIANS HOSPITAL OF DESERT CITIES, L.L.C., DESERT CITIES HEALTH DEVELOPMENT GROUP, L.L.C., DESERT CITIES HEALTH MANAGEMENT GROUP, L.L.C., GARY ANNUNZIATA, PUNEET K. KHANNA, CARLOS LOPEZ, DOUG JODOIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL STANDARD FINANCE, LLC, a Georgia limited liability company; and WINNERS DEVELOPMENT GROUP 5, LLC, a Nevada limited liability company<br><br>Plaintiffs,<br><br>vs.<br><br>PHYSICIANS HOSPITAL OF DESERT CITIES, LLC, a California limited liability company; DESERT CITIES HEALTH DEVELOPMENT GROUP, LLC, a California limited liability company; DESERT CITIES HEALTH MANAGEMENT GROUP, LLC a California limited liability company; GARY ANNUNZIATA; PUNEET K. KHANNA; CARLOS LOPEZ; DOUG JODOIN; and DOES 1-10<br><br>Defendants. | CASE NO. 13-cv-00010 DTB<br>[Hon. David T. Bristow]<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12(B)(3) AND RULE 12(B)(6)**<br><br>Complaint filed: January 2, 2013 |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 11, 2013 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, defendants Physicians Hospital of Desert Cities, L.L.C., Desert Cities Health Development Group, L.L.C., Desert Cities Health Management Group, L.L.C., Dr. Gary

Annunziata, Dr. Puneet K. Khanna, Dr. Carlos Lopez, and Dr. Doug Jodoin will move to dismiss this action pursuant to rule 12(b) of the Federal Rules of Civil Procedure.

All defendants will move to dismiss the first cause of action pursuant to rule 12(b)(3) on the basis that the agreement alleged therein provides for exclusive jurisdiction in New York, New York.

Defendants Desert Cities Health Development Group, L.L.C., Desert Cities Health Management Group, L.L.C., Dr. Annunziata, Dr. Khanna, Dr. Lopez, and Dr. Jodoin will move to dismiss the first, second, and third causes of action pursuant to rule 12(b)(6) for failure to state a claim upon which relief can be granted, on the grounds that those defendants are not parties to the contracts in dispute.

Defendant Dr. Annunziata will move to dismiss the fourth cause of action for contractual interference pursuant to rule 12(b)(6) for failure to state a claim upon which relief can be granted, on the grounds that he is not a stranger to the alleged contracts with which he is accused of interfering.

Dated:  March 1, 2013                                    GORDON & REES, L.L.P.


By: */s/ Justin D. Lewis*
M.D. Scully
Allison F. Borts
Justin D. Lewis
Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Sometimes business deals simply do not work out. The more complex the deal, the more opportunities there are for unplanned or unforeseen challenges to derail even the best-laid plans.

This case concerns a prospective deal to work toward development of an entirely new hospital for the Palm Springs area. As one might imagine, a project of this magnitude and complexity involves numerous contingencies, not least of which are financing, proper permitting, land acquisition, construction, and securing a tenant to operate the hospital. Of these, financing proved to be the most problematic.

When the hospital project fell apart, the plaintiffs here chose not to move on to other opportunities and hope for better luck. Instead, they brought this suit in a misguided attempt to fix blame for the unraveling of a deal that was not meant to be.

In so doing, they have ignored a binding forum-selection clause and asserted baseless claims in contract and tort, prompting this motion to dismiss pursuant to rule 12(b).

## II. FACTS

Plaintiff Winners Development Group 5, L.L.C. ("Group 5"), alleges that it contracted with defendant Physicians Hospital of Desert Cities, L.L.C. ("PHDC"), to advise PHDC in connection with PHDC's interest in building a new hospital in the Palm Springs area. Complaint, doc. 1, ¶¶ 19-23. The alleged agreement between Group 5 and PHDC is attached to the complaint as exhibit A (the "Group 5 Agreement"). The Group 5 Agreement provides for exclusive venue in Riverside County, California. Group 5 Agreement, doc. 1, exhibit A, p. 10.

Group 5 alleges that it recruited plaintiff National Standard Finance, L.L.C. ("NSF"), to make a conditional offer of financing for the hospital project. *Id*. at ¶¶

33-34. NSF, in turn, alleges that it entered into an agreement with PHDC relative to the conditional offer of financing. *Id*. at ¶¶ 33-38. The alleged agreement between NSF and PHDC is attached to the complaint as exhibit B (the "NSF Agreement"). The NSF Agreement provides for exclusive venue in New York, New York, as well as for the application of New York law. NSF Agreement, doc. 1, exhibit B.

Even though plaintiffs' contracts are with PHDC only, plaintiffs bring their contract claims against several additional defendants, including Desert Cities Health Development Group, L.L.C. ("Development L.L.C."), Desert Cities Health Management Group, L.L.C. ("Management L.L.C."), Dr. Gary Annunziata, Dr. Puneet K. Khanna, Dr. Carlos Lopez, and Dr. Doug Jodoin.

### III. ARGUMENT

#### A. This Court is an Improper Venue for NSF's Claim.

In the first cause of action, NSF alleges that all defendants breached an alleged contract between NSF and PHDC. This cause of action, or, indeed, any claim arising from the alleged NSF contract, is barred in this forum because the NSF Agreement provides for exclusive venue in New York City.

Under the heading "Legal Jurisdiction," the NSF Agreement provides as follows: "This letter and proposal shall be governed by and construed and interpreted in accordance with the internal laws of the State of New York, U.S.A without regard to principles of conflicts of laws." NSF Agreement, doc. 1, exhibit B. The agreement continues, "Applicant submits to the exclusive jurisdiction of the courts of New York, N.Y., U.S.A. for the resolution of any dispute in connection with Proposal." *Id*.

Thus, under the NSF Agreement's plain language, any disputes arising in connection with the agreement can only be heard in New York City. Because it expressly calls for "exclusive jurisdiction" in New York City, the forum-selection

clause is mandatory in nature. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.* (9th Cir. 1987) 817 F.2d 75, 77 ("exclusive jurisdiction" signifies mandatory forum selection clause); *Slater v. Energy Services Group Int'l, Inc.* (11th Cir. 2011) 634 F.3d 1326, 1330 ("a mandatory clause…dictates an exclusive forum for litigation under the contract").

A forum-selection clause is a proper ground for a motion to dismiss under rule 12(b)(3). *Argueta v. Banco Mexicano, S.A.* (9th Cir. 1996) 87 F.3d 320, 324; *Lipcon v. Underwriters at Lloyd's, London* (11th Cir. 1998) 148 F.3d 1285, 1290 (rule 12(b)(3) is "appropriate vehicle"); Schwarzer *et al.*, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group 2012) ¶ 4:160, p. 4-22.

In fact, the Supreme Court has held that forum-selection clauses are presumptively valid and must be honored "absent some compelling and countervailing reason." *Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 12. Any party challenging enforcement of a forum-selection clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.* at 15.

NSF has no hope of making any such showing here. The NSF Agreement took the form of a letter *written by NSF* on NSF letterhead to PHDC. NSF Agreement, doc. 1, exhibit B. It has every appearance of a standard form agreement. *Id.* This is hardly the typical case involving an unsophisticated litigant challenging the forum-selection clause of an adhesion contract drafted by his adversary. Instead, if NSF is to resist enforcement of the forum-selection clause here, it can only do so by disavowing a provision of its own drafting.

Because the NSF Agreement provides for exclusive venue in New York City, the first cause of action should be dismissed as against all defendants.

### B. The Contract Causes of Action Cannot State Claims Against Defendants Who Are Not Parties to the Contracts.

For some reason plaintiffs took aim at all defendants in drafting their contract causes of action, despite the fact that PHDC is the only defendant that is party to the two contracts alleged in the complaint.

The first cause of action is for breach of the alleged agreement between NSF and PHDC, but NSF alleges this claim against all defendants. Complaint, doc. 1, ¶¶ 90-101. Similarly, the second cause of action is for breach of the alleged agreement between Group 5 and PHDC, but, again, the complaint alleges this claim against all defendants. *Id*. at ¶¶ 102-108. The third cause of action is for breach of the implied covenant of good faith and fair dealing; Group 5 again alleges this contract claim against all defendants, even though PHDC was the sole defendant to sign the alleged contract. *Id*. at ¶¶ 109-112.

Of course, only a party to a contract can be held liable under the contract. 14 Cal.Jur.3d (2012) Contracts, § 381 ("Only a signatory to a contract may be liable for any breach."); *Bouley v. Bouley* (N.Y. App. Div. 2005) 19 A.D.3d 1049, 1050 ("Defendant was not a party to the contract referred to in the complaint, however, and thus cannot be sued for its breach."); *Newman v. Berkowitz* (N.Y. App. Div. 2008) 50 A.D.3d 479 (it was "frivolous" for party to reargue that individual was proper defendant for breach of his corporation's contract).

#### 1. Plaintiffs Cannot Allege Assignment of Obligations Under Either the Group 5 Agreement or the NSF Agreement.

Nowhere in the complaint do plaintiffs assert that PHDC ever assigned any of its alleged obligations under the NSF Agreement or the Group 5 Agreement to any other defendant -- much less do plaintiffs allege as much with any plausibility. *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555-556 (to survive a rule 12(b)(6) motion to dismiss, plaintiff must allege sufficient factual matter to render claims facially plausible).

6
NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 13-cv-00010

### a. Group 5 Agreement

At paragraph 50(d), Group 5 alleges only that PHDC transferred certain *assets* to Management L.L.C. and Development L.L.C., including *its rights* under…[the Group 5 Agreement]." Complaint, doc. 1 (emphasis added). Yet, "[t]he mere assignment of rights under a contract does not cast on the assignee any of the personal liabilities imposed by the contract on the assignor." 6A Cal.Jur.3d (2012) Assignments, § 58 (thus, for example, "a mere acceptance of an assignment of all the assignor's interest in a contract to purchase realty is not an assumption of the assignor's obligations under the contract"). At no point in the complaint does Group 5 allege that PHDC assigned any *obligations* it owed under the Group 5 Agreement, as opposed to assets or rights of PHDC.

In any event, the Group 5 Agreement expressly prohibits assignment without prior written consent of the other party. Group 5 Agreement, doc. 1, exhibit A, p. 6; *Henkel Corp. v. Hartford Acc. & Indem. Co.* (2003) 29 Cal.4th 934, 943 (no benefits were assigned to successor corporation under liability policies because insurance contracts contained no-assignment clause and defendant insurers did not consent to assignment). Nowhere does Group 5 allege that PHDC ever sought, or that Group 5 ever granted, written consent for assignment of the Group 5 Agreement to any other defendant.

### b. NSF Agreement

As to the NSF Agreement, the complaint does not allege any assignment or transfer of any kind -- not of rights, nor assets, nor obligations.

### 2. Plaintiffs Have Alleged No Other Basis to Hold Defendants Liable Under a Contract They Did Not Sign.

As shown above, plaintiffs failed to allege that PHDC assigned any of its obligations or liabilities under the two contracts at issue to any of the other defendants in this action. Aside from the assignment issue, the complaint urges a

few other invalid grounds for extending PHDC's alleged liability to the other defendants.

Plaintiffs allege at paragraph 52 that Management L.L.C. and Development L.L.C., but not Drs. Annunziata, Khanna, Lopez, or Jodoin, are liable under the contracts because they are affiliated in some way with PHDC. Complaint, doc. 1. Whether or not there is an affiliation between PHDC and Management L.L.C. or Development L.L.C., the fact remains that neither entity signed the Group 5 Agreement or the NSF Agreement. Of course, there mere fact that one is affiliated with a contracting party does not render the affiliate liable under a contract it neither signed nor assumed by assignment.

For its part, NSF also alleges that Dr. Annunziata is liable under PHDC's contract "because of his wrongful interference with the funding of the Royal Bank of Canada facility." Complaint, doc. 1, ¶ 97. NSF leaves to guesswork how this accusation of tort liability renders Dr. Annunziata liable under a contract he did not sign.

NSF goes on to allege that Drs. Annunziata, Khanna, Lopez, and Jodoin are personally liable under the NSF Agreement simply because PHDC was "undercapitalized." Complaint, doc. 1, ¶ 99. This single, conclusory allegation is hardly sufficient to invoke any purported alter ego liability. *See Feigen v. Advance Capital Mgt. Corp*. (N.Y. App. Div. 1989) 150 A.D.2d 281, 282 (alter ego theory inadequate to support claim of breach of contract against individual shareholders and directors, absent allegations of "fraud or other corporate misconduct, or that the individuals in question conducted business in their personal rather than corporate capacity.")

Finally, in the Byzantine allegations of paragraph 100, NSF seems to allege that, *if* any of the individual defendants received distributions from PHDC, they became personally liable under the NSF Agreement by operation of California

Corporations Code section 2011. Complaint, doc. 1. First of all, section 2011 applies only to causes of action alleged against a dissolved corporation. Cal. Corp. Code § 2011(a). There is no allegation in the complaint that PHDC is dissolved. Second, nowhere does NSF allege that any distributions ever took place that could have triggered section 2011. Lastly, NSF's reliance on section 2011 is directly at odds with the NSF Agreement's choice of law provision. New York law, not California law, governs the NSF agreement. NSF Agreement, doc. 1, exhibit B.

* * *

In sum, PHDC is the only signatory to the two contracts in dispute here. Nonetheless, plaintiffs bring their three contract claims against all defendants, despite failing to plead any plausible facts or valid legal theories to justify doing so.

### C. The Interference Claim Fails Because Dr. Annunziata Is No Stranger to the Alleged Contracts.

In the fourth cause of action, Group 5 asserts that Dr. Annunziata interfered with its alleged contracts with PHDC, Management L.L.C., and Development L.L.C. Complaint, doc. 1, ¶¶ 113-119. However, Dr. Annunziata had no duty to refrain from interfering with Group 5's alleged contracts with those entities.[1]

"The tort duty not to interfere with the contract falls only on strangers -- interlopers who have no legitimate interest in the scope or course of the contract's performance." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 514. This is because the tort's "underlying policy" is merely to guard "against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship." *Id*. (emphasis original).

---

[1] In any event, the complaint does not plausibly plead any contract between Group 5 and either Management L.L.C. or Development L.L.C. The two contracts attached to the complaint are signed by PHDC only. Group 5 Agreement, NSF Agreement, doc. 1, exhibits A and B. There are no allegations of separate contracts with Management L.L.C. or Development L.L.C., nor any allegations that PHDC assigned its obligations to either entity.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Here, although Dr. Annunziata is not a party to any contracts with Group 5, he is hardly a stranger to the alleged contracts between Group 5 and PHDC, Management L.L.C., or Development L.L.C.

Plaintiffs' own allegations demonstrate time and again that Dr. Annunziata is no stranger to the alleged contracts. First, plaintiffs allege that Dr. Annunziata is one of the "Doctor Managers" of PHDC, Development L.L.C., and Management L.L.C. (complaint, doc. 1, ¶ 4), and that he "acted as Chairman" of those entities (*id*. at ¶ 59). *See also id*. at ¶ 46 (the individual defendants "constituted the Board of Managers of Management L.L.C. and Development L.L.C."). Plaintiffs further allege that Dr. Annunziata took the lead in defendants' initial preparations for the hospital project (*id*. at ¶¶ 14-16), that he worked with Group 5 on PHDC's behalf to set up the alleged contractual relationship between PHDC and Group 5 (*id*. at ¶¶ 19-23), and that he acted on PHDC's behalf in allegedly accepting a conditional financing commitment that Group 5 arranged (*id*. at. ¶ 34). Plaintiffs also admit that Dr. Annunziata "personally executed" Group 5's contract "on behalf of PHDC." *Id*. at ¶ 114.

Thus, Group 5's own allegations make clear that Dr. Annunziata was no stranger to the contracts he allegedly interfered with. Equally compelling, though, is what Group 5 fails to allege. Nowhere does the complaint allege that Dr. Annunziata committed a single act of contractual interference *outside* of his role as "Doctor Manager" or "Chairman" of PHDC, Management L.L.C., and Development L.L.C. *See Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24-25 ("corporate agents and employees acting for on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract"); *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1603-1604.

Because Dr. Annunziata is no stranger to the contracts with which Group 5 accuses him of interfering, the fourth cause of action must also be dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

A mandatory forum-selection clause requires NSF to bring its claim for breach of contract in New York City. Accordingly, the first cause of action should be dismissed as against all defendants for improper venue under rule 12(b)(3).

In addition, the second and third causes of action should be dismissed for failure to state a claim against defendants Management L.L.C., Development L.L.C., Dr. Annunziata, Dr. Khanna, Dr. Lopez, and Dr. Jodoin, because those defendants are not parties to the contract at issue in those claims.

If the Court denies the rule 12(b)(3) motion to dismiss the first cause of action in its entirety, the Court should nonetheless dismiss the first cause of action as against defendants Management L.L.C., Development L.L.C., Dr. Annunziata, Dr. Khanna, Dr. Lopez, and Dr. Jodoin because those defendants are not parties to the contract at issue in the first cause of action.

Finally, the Court should dismiss the fourth cause of action for contractual interference because Dr. Annunziata is not a stranger to the alleged contracts at issue in that claim.

Defendants respectfully request that the Court enter an order of dismissal.

Dated: March 1, 2013          GORDON & REES, L.L.P.

By: */s/ Justin D. Lewis*
M.D. Scully
Allison F. Borts
Justin D. Lewis
Attorneys for defendants

12